***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement, incorporated herein by reference, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, plaintiff was an employee of defendant-employer.
3. The carrier on the risk for defendant-employer in this claim is Montgomery Insurance Company.
4. Plaintiff's average weekly wage on April 8, 2002, will be calculated by the Industrial Commission using an Industrial Commission Form 22 Wage Chart.
5. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction over the parties and the subject matter of this claim.
6. Plaintiff alleges that on April 9, 2002, he sustained a disabling left elbow injury by accident arising out of and in the course of his employment by defendant. Defendant denies plaintiff's allegation and contends that plaintiff has not sustained a compensable injury by accident arising out of and in the course of his employment. Defendants further allege that plaintiff's injury and disability, if any, are due to a pre-existing injury and are not medically related to the alleged injury by accident.
7. Industrial Commission proceedings, consisting of eight pages, may be received into evidence.
8. Plaintiff's medical records for the period prior to April 9, 2002, may be received into evidence, pursuant to plaintiff's claim that these are all prior medical records.
9. Plaintiff's medical records for the period of April 9, 2002, through the present may be received into evidence.
10. Plaintiff contends the issues to be resolved are as follows: (1) did plaintiff sustain an injury by accident arising out of and in the course of his employment with defendant-employer on April 9, 2002; and (2) what benefits is plaintiff entitled to recover under the workers' compensation act?
11. Defendants contend the issues to be resolved are as follows: (1) whether plaintiff suffered and/or described an injury by accident that resulted in a compensable injury; (2) what portion, if any, of plaintiff's medical treatment is related to plaintiff's alleged injury by accident; and (3) what portion of plaintiff's medical treatment is related to plaintiff's pre — existing medical issues/problems?
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. Plaintiff was employed as a route driver for Le Bleu and was working in that capacity on April 9, 2002. Plaintiff's job duties required him to deliver boxes of bottled water to grocery stores and convenience stores. The boxes weighed approximately 30 to 40 pounds, and were delivered from the truck to the store by use of a hand cart.
2. Prior to his employment with defendant-employer, plaintiff suffered left arm pain and left carpal tunnel syndrome for which he received treatment in 1997 and 2000. Later, while employed with defendant-employer, plaintiff was also seen for general joint pain in February 2002; however, it is unclear whether this pain relates to his left arm or hand specifically.
3. On April 9, 2002, plaintiff was delivering water to a Harris Teeter grocery in Charlotte when he injured his left arm. The hand cart, after being loaded with boxes of water, slipped out of his hand and rocked back and forth and struck his left arm at his elbow. Plaintiff immediately felt tingling in his "funny bone" within his left arm. He continued to work for two hours that morning, hoping that the tingling would go away. Plaintiff notified his supervisor, Jamie Taylor, of his injury and was advised to go to his family physician.
4. Dr. Michael Trombley examined plaintiff that same day. Dr. Trombley noted that plaintiff had swelling in his left forearm and diagnosed him with a contusion to the left arm. Plaintiff continued to work for Le Bleu with his arm wrapped in an ACE bandage. His arm continued to hurt and on Friday April 12, after speaking with Le Bleu's office manager, plaintiff was told that he could not continue working until his arm was examined further. Dr. Trombley provided plaintiff with an out of work note for April 12. Dr. David Tignor wrote plaintiff out of work for the 3 days from April 15, 2002.
5. Plaintiff tried to return to work on April 19. His truck was not on the lot and he paged his supervisor who told him he was suspended because two weeks earlier, on April 5, 2002, his truck had hit a tree after he had failed to put his hand brake on. Plaintiff was not provided with either a verbal or written warning of this incident prior to April 19, although the supervisor knew of this incident the day that it happened.
6. Plaintiff continued to seek medical treatment from Drs. David Tignor, Michael Meighan, and James Skahen. He was given work restrictions of no lifting over 10 pounds. Le Bleu had no light duty work available.
7. During his medical appointments, plaintiff complained of numbness and tingling in the fingers of the left hand, a symptom of compression of the medial and ulnar nerves. Eventually, Dr. Stephen Furr examined plaintiff and recommended both carpel tunnel and cubital tunnel releases. At the time of the hearing before the Deputy Commissioner, plaintiff had not reached maximum medical improvement.
8. Plaintiff filed a workers' compensation claim as a result of his April 9, 2002, injury. On April 22, 2002, David Grant prepared four incident reports concerning incidents involving plaintiff's truck. Le Bleu was aware of these incidents immediately after they had occurred. No verbal or written warning was given to plaintiff until after he filed his worker's compensation claim. Plaintiff was fired after his workers' compensation claim was denied.
9. The greater weight of the evidence supports a finding that plaintiff sustained a compensable injury by accident on April 9, 2002. A hand truck hit plaintiff's left arm near the elbow while delivering bottled water. The injury was promptly reported to his supervisor on the date of the accident. Plaintiff described a compensable injury in his recorded statement given on April 23, 2002. Jamie Taylor, in his recorded statement given on that same date, confirms that plaintiff promptly reported the accident. Mr. Taylor testified that plaintiff told him that the injury occurred as plaintiff described it at the hearing. The Form 19, prepared by the employer on April 10, 2002, gives an identical description of how the injury occurred. Plaintiff told his family physician, Dr. Trombley, on April 9, 2002, that he injured his left arm in an accident at work. There is no evidence to suggest that the incident did not occur as plaintiff described it to all of the persons above listed. Further, there is no inconsistency in the version of how the accident occurred to suggest that the plaintiff is not credible. More importantly, upon oral argument before the Full Commission, defendants' counsel conceded the injury by accident but denied that plaintiff's carpal tunnel syndrome resulted from it.
10. The medical testimony presented in this case supports plaintiff's position on causation both for his carpal tunnel syndrome and for his ulnar nerve problems. Dr. Stephen Furr testified, and the Full Commission finds as fact, that the accident described could or might have caused or aggravated plaintiff's carpal tunnel syndrome and his ulnar and median nerve compression. Further, Dr. Tignor stated that it was possible for a blow to the elbow, resulting in swelling in that arm, to cause compression of the median and ulnar nerve.
11. To properly evaluate this causation issue, it is important to understand the anatomy of the median and ulnar nerve. The median nerve affects sensory feeling in the thumb, forefinger, middle finger, and half of the ring finger. The ulnar nerve affects the other half of the ring finger and the small finger. Compression of these nerves results in numbness and tingling in those fingers based on the dermatomal pattern. Plaintiff reported to the doctors that he was having numbness and tingling in all the fingers in his left hand, which was consistent with compression of both nerves.
12. Clinical testing of plaintiff confirmed that he exhibited symptoms of median and ulnar nerve compression. The doctors who treated plaintiff's left arm noticed positive Tinel's and Phalen's tests at the median nerve and ulnar nerve. The doctors conceded that swelling in the area of these nerves could cause compression of the nerves. In summary, if the blow to the arm caused swelling in the arm, which was documented in the initial note of April 9, then that swelling could have caused or aggravated plaintiff's carpal tunnel syndrome and his median and ulnar nerve problems. All of the physicians recommended or prescribed anti-inflamatories for plaintiff's condition. It seems, at least for some of the doctors, that their prescriptions speak louder and more clearly than their opinions.
13. Dr. Skahen examined plaintiff only one occasion. He obviously had a negative opinion of plaintiff. He also attempted to be even more damaging to plaintiff's claim in the deposition than he was in his note. Dr. Skahen attempted to deny that he wrote that plaintiff would likely be a surgical candidate in the future for his symptoms. He testified that plaintiff's symptoms were out of proportion to his exam but could really only point to some inconsistent results on the two point discrimination test. Finally, Dr. Shaken testified that, in his opinion, carpel tunnel syndrome is not caused by repetitive work. Dr. Skahen, by his own testimony, reveals a bias against plaintiff and his workers' compensation claim. His testimony is entitled to little weight.
14. Plaintiff has been disabled from his injury since April 12, 2002. He was written out of work on that date. When plaintiff attempted to return to work, he was suspended and then terminated while on work restrictions of no lifting over 10 pounds. Plaintiff has looked for work since his termination and has been unable to locate employment. Dr. Purr testified that he had plaintiff under work restrictions from the time he first began treating plaintiff. At the time of the Deputy Commissioner hearing, plaintiff had not yet reached maximum medical improvement.
15. Le Bleu's attempt to create a constructive refusal to work situation is without merit. Plaintiff was never provided with any of the written warnings dated April 23, 2002, that were placed in his personnel file. The alleged infractions had taken place more than two to three weeks prior to the written warnings, and all the warnings were written on the same day. While David Grant indicated that the delay in writing the warnings was to finish an "investigation," he never spoke with plaintiff or any other person involved in the incidents. Further, the termination took place after the workers' compensation claim was denied. If sufficient grounds existed on April 23, 2002, to terminate plaintiff, it is questionable as to why the employer waited until May 13 to discharge plaintiff. Clearly, it was to coordinate the denial of his compensation benefits. There was no showing that any other employee had been fired under similar circumstances.
16. Plaintiff's average weekly wage based on the submitted Form 22 was $444.03, which yields a compensation rate of $296.04.
17. Plaintiff has reached maximum medical improvement with respect to his carpal tunnel syndrome but has not reached maximum medical improvement with respect to his ulnar nerve problems.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident when he lost control of a loaded hand truck that subsequently rocked back and forth and struck his arm and elbow. This constituted an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Harding v. Thomas Howard, Co.,256 N.C. 427, 124 S.E.2d 109 (1962); N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury, plaintiff was treated by various physicians and other medical providers. Defendants are responsible for payment of such treatment pursuant to N.C. Gen. Stat. § 97-25, as limited by N.C. Gen. Stat. § 97-25.1. This includes the surgery for carpal tunnel syndrome performed by Dr. Stephen Furr. Additionally, if still needed, defendants are responsible for furnishing through Dr. Furr an ulnar nerve transposition procedure that he recommended.
3. As a further result of his compensable injury, plaintiff has been unable to work or earn wages since April 12, 2002. Defendants owe plaintiff compensation of $296.04 per week for each week since April 12, 2002, until such time as he is able to return to work at the same or greater wages than $444.03 per week. N.C. Gen. Stat. § 97-2(6).
4. Defendants are entitled to appropriate credit for any unemployment compensation paid to plaintiff. N.C. Gen. Stat. § 97-42.1.
5. Under the circumstances of this case, the ruling of the Court inSeagraves does not apply. Seagraves v Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fee hereafter awarded and further subject to credit for any unemployment compensation paid to plaintiff, defendants shall pay to plaintiff compensation at the rate of $296.04 per week from April 12, 2002, and continuing until plaintiff returns to work or until further order of the Industrial Commission. The portion of the foregoing that has accrued shall be paid to plaintiff in a lump sum, with interest thereon at eight percent (8%) per year from August 21, 2002, until paid. Defendants shall pay 25% of the lump sum directly to plaintiff's counsel as a reasonable attorney fee. Thereafter defendants shall pay every fourth check to plaintiff's attorney.
2. Defendants shall pay to the medical providers who treated plaintiff as a result of his compensable injury their charges for such service, subject to the Industrial Commission Medical Fee Schedule. This includes the carpal tunnel surgery performed by Dr. Stephen Furr, and will likewise include the ulnar nerve transposition surgery recommended, but not yet performed, by Dr. Furr.
3. Defendants shall assist plaintiff in obtaining a suitable job.
4. Defendants shall pay the costs.
This 19th day of September 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER